*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | |
|---|---|
| LINDA M. WASILAUSKIS, )<br>)<br>    *Plaintiff*[1] )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>**Commissioner of Social Security,** )<br>)<br>    *Defendant* ) | *Civil No. 08-284-B-W* |

***REPORT AND RECOMMENDED DECISION*[2]**

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether substantial evidence supports the commissioner's determination that the plaintiff, who alleged disability stemming from a left-hand degloving injury, T-11 disc wedging, anxiety disorder, and depressive disorder, was capable of making an

---

[1] Linda M. Wasilauskis is the mother of Trevor P. Alley, who was the claimant in this action. On June 18, 2008, while Alley's appeal was pending at the Appeals Council, he died. *See* Record at 751. Wasilauskis was substituted as plaintiff in that appeal, *see id*. at 6, 750, however, her counsel inadvertently filed the instant suit in Alley's name. *See* Complaint (Docket No. 1); Motion for the Substitution of Parties ("Motion To Substitute") (Docket No. 15). Following a telephonic conference with counsel held at my initiative on March 12, 2009, *see* Report of Conference of Counsel and Order (Docket No. 14), the plaintiff's counsel filed a motion to substitute Wasilauskis as plaintiff, *see* Motion To Substitute, which I granted without objection on March 13, 2009, *see* Order (Docket No. 16). For ease of reference, I will refer throughout this decision to Alley as the "plaintiff."

[2] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on March 20, 2009, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority and page references to the administrative record.

adjustment to work existing in significant numbers in the national economy.[3] I recommend that the decision of the commissioner be vacated as to SSD benefits only and the case remanded for further proceedings consistent herewith.[4]

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had a severe combination of impairments of status-post left-hand degloving injury, wedging of the T-11 disc, an anxiety disorder, and a depressive disorder, Finding 3, Record at 17; that he had no impairment or combination of impairments that met or medically equaled any impairment listed in Appendix 1 to Subpart P, 20 C.F.R. § 404 (the "Listings"), Finding 4, *id*. at 19; that he retained the residual functional capacity ("RFC") to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand or walk with normal breaks for about six hours in an eight-hour work day, sit with normal breaks for about six hours in an eight-hour day, requiring a sit-stand option, engage in occasional fine and gross manipulation with his dominant left hand, although he was incapable of frequent fine or gross manipulation with that hand, frequently climb, balance, kneel, and crouch, occasionally stoop and crawl, understand and remember simple and complex instructions, carry out simple tasks in a normal schedule, interact appropriately with co-workers and supervisors, although he could not interact with the public in a competitive work environment, and adapt to minor changes in routine, Finding 5, *id*. at 20-21; that, considering his age (24 years old, which is defined as a younger individual, on the alleged disability onset date),

---

[3] T-11 is one of the thoracic vertebrae, which are "the segments of the vertebral column, usually 12, which articulate with ribs to form part of the thoracic cage." Stedman's Medical Dictionary 1957 (27th ed. 2000). A degloving injury is an "avulsion of the skin of a portion of the body (most commonly on the extremities) in which the part is skeletonized by removal of most or all of the skin and subcutaneous tissue." *Id*. at 904.

[4] The plaintiff applied not only for SSD and SSI benefits but also for child disability benefits. *See* Record at 14, 30. At oral argument, his counsel confirmed that he does not appeal dismissal of his application for child disability benefits.

education (at least high school), work experience (no past relevant work), and RFC, he could be expected to make a vocational adjustment to work existing in significant numbers in the national economy, Findings 5-9, *id*. at 25; and that he therefore had not been under a disability at any time from March 1, 2003, through the date of the decision, Finding 10, *id*. at 26.[5]  The Appeals Council declined to review the decision, *id*. at 6-8, making it the final determination of the commissioner, 20 C.F.R. §§ 404.981; 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7.  The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's residual work capacity to perform such other work.  *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff's argument also implicates Steps 2 and 3 of the sequential evaluation process.  Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden,

---

[5] The plaintiff had acquired sufficient quarters of coverage to remain insured for purposes of SSD through March 30, 2007, *see* Finding 1, Record at 17, a few months prior to the decision date of November 11, 2007, *see id*. at 27.

designed to do no more than screen out groundless claims.  *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1123 (1st Cir. 1986).  When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* at 1124 (quoting Social Security Ruling 85-28).

At Step 3, a claimant bears the burden of proving that his or her impairment or combination of impairments meets or equals the Listings.  20 C.F.R. §§ 404.1520(d), 416.920(d); *Dudley v. Secretary of Health & Human Servs.*, 816 F.2d 792, 793 (1st Cir. 1987).  To meet a listed impairment, the claimant's medical findings (*i.e.*, symptoms, signs, and laboratory findings) must match those described in the listing for that impairment.  20 C.F.R. §§ 404.1525(a), 404.1528, 416.925(a), 416.928.  To equal a listing, the claimant's medical findings must be "at least equal in severity and duration to the listed findings."  *Id*. §§ 404.1526(a), 416.926(a).  Determinations of equivalence must be based on medical evidence only and must be supported by medically acceptable clinical and laboratory diagnostic techniques.  *Id*. §§ 404.1526(b), 416.926(b).

The plaintiff complains that the administrative law judge (i) failed to evaluate whether his hand injury met Listing 1.08, (ii) reached an RFC determination unsupported by substantial evidence, (iii) relied on vocational expert testimony that was both irrelevant and inconsistent with the *Dictionary of Occupational Titles* (U.S. Dep't of Labor, 4th ed. rev. 1991) ("DOT"), and (iv) erred in determining that his asthma was non-severe.  *See* Statement of Specific Errors ("Statement of Errors") (Docket No. 7) at 1-12.  The commissioner both contests these grounds

for reversal and remand and argues that, as a matter of law, Wasilauskis cannot be entitled to any SSI benefits on account of her son's claim because she is not among the narrowly defined class of persons who may collect such benefits following a claimant's death.  I conclude, and recommend that the court find, that the administrative law judge committed reversible error in relying on flawed vocational expert testimony, but that the case should be reversed and remanded with respect to the plaintiff's SSD claim only.  Should the court agree that remand is warranted, for the benefit of the parties, I shall briefly discuss the plaintiff's remaining points of error.

## I.  Discussion

### A.  Entitlement to Decedent's SSI Benefits

As a threshold matter, counsel for the commissioner contends that the law is clear that Wasilauskis does not meet statutory or regulatory criteria for entitlement to retroactive SSI benefits on account of her deceased son's claim.  She is correct.

The relevant statute decrees that in SSI cases in which the commissioner finds that "less than the correct amount of benefits has been paid with respect to any individual," a "proper adjustment or recovery" shall be made, if such individual is deceased, by payment to an eligible surviving spouse or to the individual's parent or parents "if such individual was a disabled or blind child who was living with his parent or parents at the time of his death or within the 6 months immediately preceding the month of such death[.]"  42 U.S.C. § 1383(b)(1)(A).  This is echoed in the commissioner's implementing regulations.  *See* 20 C.F.R. § 416.542(b).  *See also, e.g.*, *Smith v. Califano*, 597 F.2d 152, 155-56 (9th Cir. 1979) (plain language of then operative version of 42 U.S.C. § 1383(b) and its legislative history made clear that Congress did not intend that commissioner make posthumous underpayments of Title XVI, or SSI, benefits to anyone

except an eligible spouse); *Dykes ex. rel. Brymer v. Barnhart*, 112 Fed. Appx. 463, 466 n.4 (6th Cir. 2004) (noting, in passing, that daughter of deceased claimant had conceded that SSI benefits, which were payable only to a surviving spouse, were not involved in appeal); *Motley ex. rel. Motley v. Astrue*, No. 06 Civ. 15269(RMB)(THK), 2008 WL 2755840, at *2 & n.2 (S.D.N.Y. July 14, 2008) (holding that magistrate judge properly determined that SSI benefits were payable to deceased claimant's parent "only for months of eligibility during which the deceased underpaid recipient was a 'child,' and a 'child' is defined, in part, as under twenty-two years old and a student regularly attending school or college or training that is designed to prepare the child for a paying job.") (citations and internal punctuation omitted).

Alley, who was born on August 18, 1979, applied for SSI benefits on October 7, 2003, alleging that he became disabled on March 1, 2003. *See* Record at 14 & Finding 6, *id.* at 25. Because he was already 23 as of his date of alleged onset of disability, he was not a child during any time period for which he might have been eligible for SSI benefits. Wasilauskis therefore cannot, as a matter of law, be entitled to retroactive payment of SSI benefits on account of his application.

### B.  Reliance on Flawed Vocational Expert Testimony

In finding the plaintiff capable of returning to work existing in significant numbers in the national economy, the administrative law judge relied on vocational expert Warren Maxim's written response to interrogatories, in which Maxim indicated that a person with the posited restrictions could perform the jobs of courier/messenger, DOT § 230.663-010, ticket taker, DOT § 344.667-010, dowel inspector, DOT § 669.687-014, and parking lot attendant, DOT § 915.473-010. *See* Record at 26, 153-58. The plaintiff contended that, for various reasons, this reliance was misplaced. *See* Statement of Errors at 8-12. At oral argument, counsel for the

commissioner conceded that the administrative law judge erred in concluding that the plaintiff retained the RFC to perform three of the four jobs at issue. However, she argued that he supportably found the plaintiff capable of performing the job of dowel inspector, which exists in significant numbers in the national economy.

As the plaintiff points out, *see* Statement of Errors at 10, adjudicators are obliged to identify and resolve discrepancies between vocational evidence and the DOT before relying on a vocational expert's evidence to support a Step 5 finding, *see* Social Security Ruling 00-4p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2008) ("SSR 00-4p"), at 244 ("When there is an apparent unresolved conflict between VE [vocational expert] or VS [vocational specialist] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled.").

The DOT indicates that the job of dowel inspector requires frequent handling. *See* DOT § 669.687-014. The plaintiff discerns a clash between Maxim's finding that a person unable to use his dominant hand for frequent fine or gross manipulation can perform the job of dowel inspector and the DOT's description of that job as requiring frequent handling. *See* Statement of Errors at 10. The commissioner discerns no such discrepancy, reasoning that (i) the administrative law judge made no finding that the plaintiff was incapable of frequent handling, but rather that he was incapable of frequent fine or gross manipulation with one extremity, (ii) the DOT does not address whether, in handling, one or both hands are required, (iii) Maxim was told that the hypothetical claimant was incapable of frequent fine or gross manipulation with his dominant left hand and yet found him capable of the job of dowel inspector, (iv) the fact that a person cannot perform the requirements of a job with one hand does not necessarily mean that

7

he cannot perform it, a proposition for which he cites *Diehl v. Barnhart*, 357 F. Supp.2d 804, 822 (E.D. Pa. 2005), and (v) the plaintiff stated only that he could not use his left hand repetitively, not that he had lost all function in that extremity.

The plaintiff has the better of the argument. "Gross manipulation" is the same thing as "handling." *See* Record at 417. A job requirement for frequent handling seemingly is discrepant with an inability to use one's dominant hand for that very activity. While, as the *Diehl* court pointed out, *see Diehl*, 357 F. Supp.2d at 822, a claimant in such circumstances might nonetheless be able to perform such a job, the vocational expert should be called upon to explain why, *see, e.g., Wilde v. Astrue*, No. EDCV 07-1171-JTL, 2008 WL 2523831, at *6 (C.D. Cal. June 20, 2008) (administrative law judge erred in relying on vocational expert's testimony when he elicited no explanation as to how a person limited to occasional fingering in non-dominant hand could perform three jobs that the DOT indicated required frequent fingering); *compare, e.g., Cowan v. Astrue*, No. C 07-1136 VRW, 2008 WL 2761684, at *9-*10 (N.D. Cal. July 14, 2008) (administrative law judge did not err in relying on vocational expert's testimony when expert explained why person limited to occasional handling on his dominant side but able to handle frequently on non-dominant side could perform job that the DOT indicated required frequent handling).[6]

---

[6] The *Diehl* court declined to find a material conflict between a vocational expert's testimony that a person limited to occasional use of his right hand for simple grasping, fine manipulation, and pushing/pulling could perform certain jobs and the DOT's indication that those jobs required frequent or constant reaching and handling, and in some cases fingering. *See Diehl*, 357 F. Supp.2d at 809, 822. The *Diehl* court reasoned that it was "not clear" that there was a conflict, given that "in some cases [the plaintiff] may be able to satisfy the requirements of the job by reaching, handling, or fingering with his left hand with occasional assistance from his right hand." *Id.* at 822. It seems to me that it is not clear that there is *not* a conflict, and accordingly a vocational expert ought to explain how a claimant with such restrictions nonetheless can manage to perform jobs such as these before the commissioner can rely on them to meet his Step 5 burden.

No such explanation was offered or sought in this case. Hence, the administrative law judge erred on relying on the plaintiff's ability to perform the job of dowel inspector to meet the commissioner's Step 5 burden.[7]

In any event, as the plaintiff points out, there is a further problem with the administrative law judge's reliance on the dowel inspector job: while he conveyed to Maxim that the hypothetical claimant would require a sit-stand option, he failed to specify the frequency of the need to alternate sitting and standing, as required by Social Security Ruling 96-9p ("SSR 96-9p"). *See* Statement of Errors at 11; Record at 158; SSR 96-9p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2008), at 158 (RFC assessments "must be specific as to the frequency of the individual's need to alternate sitting and standing").

At oral argument, counsel for the commissioner suggested that because Maxim sought no clarification as to the frequency of the need for alternate sitting and standing, one can infer that the dowel inspector job permitted an option to sit or stand at will. I decline to draw such an inference. The commissioner bears the burden of proof at Step 5, and SSR 96-9p requires that the frequency of the need to sit and stand be specified. The administrative law judge failed to do so, undercutting his reliance on the job of dowel inspector as substantial evidence of the

---

[7] After the vocational expert responded in writing to the administrative law judge's interrogatories, the plaintiff's counsel requested a supplemental hearing, which was held on October 2, 2007, with the vocational expert present. *See* Record at 777. In his decision, the administrative law judge stated, "The claimant's representative did not question the vocational witness on the social interaction requirements or the handling requirements of these jobs, which purportedly was the purpose of the supplemental hearing." *Id*. at 26. Be that as it may, that omission did not relieve the commissioner of his Step 5 burden, including his obligation pursuant to SSR 00-4p to detect and resolve apparent inconsistencies between vocational expert testimony and the DOT before relying on the testimony in question.

plaintiff's ability to perform work existing in significant numbers in the national economy. *See, e.g., Maynard v. Astrue*, 276 Fed. Appx. 726, 731 (10th Cir. 2007).[8]

### C. Other Points

Should the court agree that the plaintiff's third point of error, that the administrative law judge relied on vocational expert testimony that was both irrelevant and inconsistent with the DOT, merits reversal and remand, I briefly consider his remaining points for the benefit of the parties on remand.

### 1. Failure To Consider Listing 1.08

In his first point of error, the plaintiff faults the administrative law judge for evaluating his hand injury at Step 3 under the wrong listing, Listing 1.02, rather than Listing 1.08. *See* Statement of Errors at 1-4. For two reasons, this argument falls short.

First, there is no evidence of record that the plaintiff, who was represented by counsel, ever advised the administrative law judge that he claimed that his hand injury met Listing 1.08, or that the issue otherwise was put in play by a finding by a medical source that the injury met that listing. As the First Circuit has observed, "[w]hen a claimant is represented, the ALJ[] should ordinarily be entitled to rely on claimant's counsel to structure and present the claimant's case in a way that claimant's claims are adequately explored." *Faria v. Commissioner of Soc. Sec.*, No. 97-2421, 1998 WL 1085810, at *1 (1st Cir. Oct. 2, 1998) (citations and internal quotation marks omitted).

---

[8] The plaintiff makes one additional argument implicating the dowel inspector job, that the administrative law judge failed to recognize a discrepancy between the DOT and Maxim's testimony that he could perform the job with a sit-stand option. *See* Statement of Errors at 11. The premise that there was an apparent inconsistency between the vocational expert's testimony and the DOT is, in this instance, incorrect. The DOT does not address the subject of the need to alternate sitting and standing. *See, e.g., Zblewski v. Astrue*, No. 08-1755, 2008 WL 5206384, at *4 (7th Cir. Dec. 15, 2008). Hence, there could be no discrepancy. *See id.*

Second, and in any event, any error in failing to consider Listing 1.08 was harmless. Listing 1.08 requires demonstration of "[s]*oft tissue injury (e.g., burns)* of an upper or lower extremity, trunk, or face and head, under continuing surgical management, as defined in 1.00M, directed toward the salvage or restoration of major function, and such major function was not restored or expected to be restored within 12 months of onset." Listing 1.08. "Continuing surgical management" is defined as "surgical procedures and any other associated treatments related to the efforts directed toward the salvage or restoration of functional use of the affected part[,]" including treatments and complications "that delay the individual's attainment of maximum benefit from therapy." Listing 1.00(M).

As counsel for the commissioner noted at oral argument, the plaintiff's hand injury cannot fairly be said to have been "under continuing surgical management."

The plaintiff sustained a severe left-hand degloving injury in an automobile accident on April 23, 2002, during which his hand was dragged between the car window and the asphalt. *See* Record at 228, 299. He lost tissue, tendons, and even part of the bone of the hand. *See id*. at 228. Following initial surgery, he underwent further reconstructive surgery on August 19, 2002. *See id*. at 187-89. He thereafter discussed with his hand surgeon the possibility of further reconstructive surgery in the form of tendon transfers. *See id*. at 258 (progress note of April 3, 2003), 257 (progress note of September 9, 2003). However, the record contains no indication that any further surgery ever was performed. Despite the plaintiff's lack of extension, for which tendon transfers were contemplated, and his somewhat thickened scars in his fourth web space, his hand surgeon noted on September 9, 2003, that he was "otherwise using his [injured left] hand relatively normally." *Id*. at 257. His hand was not "under continuing surgical management" for purposes of Listing 1.08.

11

## 2.  Challenge to RFC Determination

In his second point of error, implicating the issue of RFC, the plaintiff complains that the administrative law judge (i) failed to consider either the side effect of severe fatigue resulting from prescribed methadone treatment or residual head pain following brain surgery in 2000, and (ii) engaged in a flawed credibility analysis.  *See* Statement of Errors at 4-8.

The administrative law judge did not overlook the claimed side effect of severe fatigue. Rather, he discounted it on the basis that it was contradicted by other evidence of record, including the plaintiff's report to a clinician on November 4, 2004, that he was lifting weights and riding his bicycle, and his testimony at hearing that he plays computer games for 30 to 60 minutes at a time, goes to the grocery store, rents movies, and otherwise does "nothing."  *See* Record at 19-20, 472, 794-95, 807.[9]  Nor did he ignore the claim of residual head pain, which he noted but judged less severe than the plaintiff alleged in view of a medical expert's testimony at hearing.  *See id*. at 23.  In any event, as the commissioner's counsel noted at oral argument, the administrative law judge gave significant weight to a physical RFC assessment by a Disability Determination Services ("DDS") non-examining consultant who stated that his RFC opinion addressed the plaintiff's symptoms.  *Compare id*. at 25 *with id*. at 303-10.

On its face, the plaintiff's challenge to the administrative law judge's credibility assessment falls short of independently justifying reversal and remand.  While he takes issue with a number of the grounds for that assessment, he does not address others, including findings of DDS examining consultant Donald Trumbull, M.D., with respect to the plaintiff's back pain

---

[9] To the extent the administrative law judge relied on the plaintiff's testimony concerning activities in which he was engaged as of the date of his August 30, 2006, hearing as undermining his claim of fatigue emanating from methadone use, he erred.  The plaintiff stopped taking methadone in May 2005.  *See* Record at 804.  While the administrative law judge's credibility finding, on the whole, is sufficiently supported so as not to independently justify reversal and remand, his finding as to the credibility of the claimed side effect of fatigue from methadone is at best thinly supported in view of his reliance on a flawed basis for discounting it and the existence of record evidence tending to substantiate it.  *See, e.g., id*. at 259, 454, 772-73.  This claimed side effect should be reevaluated on remand, as noted below.

12

and the administrative law judge's observations regarding a motive for secondary gain. *Compare* Statement of Errors at 5-8 *with* Record at 23-24.  In the circumstances, the adverse credibility finding is entitled to deference.  *See Frustaglia v. Secretary of Health & Human Servs.,* 829 F.2d 192, 195 (1st Cir. 1987) ("The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings.").

That said, the plaintiff is correct that several of the specific bases supplied for an adverse credibility finding are unsupported by the evidence cited.  For example, the administrative law judge characterized an MRI study of the plaintiff's spine as "unremarkable" and an x-ray study of his back as "negative."  *See* Record at 23.  However, the radiologists who interpreted those studies did not so characterize them, and they appear to document mild to moderate abnormalities.  *See id.* at 242, 247, 273-74.  The administrative law judge also erred in characterizing the testimony of a medical expert at hearing as supporting a finding that burning and tingling symptoms alleged by the plaintiff were "not considered to be associated with the severe type of neuropathic pain asserted by the claimant[.]"  *Id.* at 23.  While the expert testified that burning and tingling sensations are not themselves considered severe neuropathic pain, he did not indicate that the plaintiff had no severe head pain.  *See id.* at 820-21.  In addition, as noted above, the administrative law judge's assessment of the plaintiff's claimed side effect of fatigue from methadone was flawed.

Should the court agree that reversal and remand are warranted on the basis of the plaintiff's third point of error, I recommend that, in view of these errors, it also direct that the commissioner undertake a fresh credibility and Step 4 analysis.[10]

### 3. Flawed Analysis of Severity of Asthma

The plaintiff finally contends, in his fourth point of error, that the administrative law judge erred in judging his asthma non-severe on the ground that he had "not met his burden of proof that this condition is remediable by not smoking." Statement of Errors at 12 (quoting Record at 18). As the plaintiff suggests, this analytical construct is flawed. The administrative law judge conflated two separate analyses: whether a condition is severe and whether compliance with treatment would restore a claimant's ability to work. *See, e.g., McGuire v. Heckler*, 589 F. Supp. 718, 723 n.34 (S.D.N.Y. 1984) ("The Secretary's regulations do not explicitly authorize an ALJ to consider the ease with which an impairment could be cured when determining whether that impairment is 'severe.' Rather, a separate rule, 20 C.F.R. § 404.1530(a) (1983), states that the Secretary will not award benefits unless the claimant 'follow[s] treatment prescribed by [her] physician *if this treatment can restore [claimant's] ability to work*.'") (emphasis in original); *see also* 20 C.F.R. §§ 404.1530(a), 416.930(a).

Nonetheless, the error is harmless. The administrative law judge supplied a separate, supportable basis for his finding of the non-severity of the plaintiff's asthma: that, while there were isolated episodes in which the condition was poorly controlled, with timely treatment the

---

[10] The plaintiff argues, in passing, that the administrative law judge's inaccurate representations regarding credibility, coupled with a statement at the beginning of his decision that "[t]he claimant is a former heroin addict who suffered a left hand de-gloving injury following a high-speed motor vehicle accident on his return from a methadone clinic[,]" appear to reflect a bias against the plaintiff. Statement of Errors at 8 (quoting Record at 17). At oral argument, his counsel clarified that he did not press a stand-alone claim of bias as a basis for reversal and remand, but rather contended that the administrative law judge's attitude toward the plaintiff colored his credibility finding. The plaintiff falls short of showing bias, or even unfavorable attitude, on the part of the administrative law judge. As counsel for the commissioner noted at oral argument, the comment of which the plaintiff complains appears to be an accurate summary of the evidence of record. *Compare* Record at 17 *with id.* at 200, 223.

plaintiff's symptoms improved markedly. *See* Record at 18. The plaintiff does not challenge that alternative finding. *See* Statement of Errors at 12.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **VACATED** with respect to the SSD claim only and the case **REMANDED** for further proceedings consistent herewith.

## *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 30th day of March, 2009.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge